FILED
at____O'clock &____min.____M

FEB 2 6 2008

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF SOUTH CAROLINA

United States Bankruptcy Court
Columbia, South Carolina (42)

| | |
|---|---|
| IN RE: | C/A No. 07-06773-JW **ENTERED** |
| Lyn S. Lee-Beam, | Chapter 11 **FEB 2 6 2008** |
| Debtor(s). | **ORDER** **R.B.S.** |

This matter comes before the Court on Motion of U.S. Mortgage, LLC ("U.S. Mortgage")

to dismiss Lyn S. Lee-Beam's ("Debtor") bankruptcy case. This Court has jurisdiction pursuant

to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding pursuant to Fed. R. Bankr. P.

7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

### FINDINGS OF FACT

1.      Debtor owns a historic home located on Rutledge Avenue in Charleston, South

Carolina ("Home"). For the past twenty-five years, the Home has been operated as a bed and

breakfast with Debtor being its most recent owner and operator. Debtor also uses the Home as

her residence.

2.      On August 23, 2001, Debtor granted Wachovia Bank, N.A. a first mortgage on

the Home. The rights of Wachovia Bank, N.A. under the note and mortgage were assigned to

U.S. Mortgage.

---

[1]      To the extent any Findings of Fact constitute Conclusions of Law, they are adopted as such. To the extent
any Conclusions of Law constitute Findings of Fact, they are so adopted.

3.    As a result of a slow down in business, due– according to Debtor– to the terrorist attacks of September 11, 2001, Debtor became past due under the note, subjecting the Home to foreclosure.[2]

4.    U.S. Mortgage filed a foreclosure action in Charleston County during December of 2003.

5.    Prior to the scheduled foreclosure sale, Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code on March 2, 2004, case number 04-02531 ("First Case").

6.    Prior to confirmation of Debtor's chapter 13 plan, the First Case was dismissed on July 21, 2004 for Debtor's failure to make plan payments to the chapter 13 trustee.

7.    Debtor testified that she allowed her First Case to be dismissed due to the advice of a loan broker who promised he could obtain sufficient financing to refinance the debt of U.S. Mortgage.  Ultimately, the loan broker failed to do so.

8.    U.S. Mortgage reinstated its foreclosure action following the dismissal of the First Case and proceeded to sell the Home through a foreclosure proceeding.

9.    Prior to the foreclosure sale becoming final, Debtor filed a second case, with the assistance of counsel, under chapter 11 of the Bankruptcy Code, case number 04-14652, on December 9, 2004 ("Second Case").

10.    Debtor's schedules in the Second Case stated that the Home had a value of $2.195 million dollars and that her total debts were less than one million dollars.

11.    On February 16, 2005, Debtor and U.S. Mortgage entered into a consent agreement allowing Debtor to use the cash collateral of U.S. Mortgage in exchange for Debtor making adequate protection payments to U.S. Mortgage in the amount of $6,000.00 per month.[3]

---

[2]    It appears that U.S. Mortgage called the Note as a result of Debtor's default because, under the terms of the Note, Debtor originally had until 2016 to payoff the Note.

2

12.     Debtor filed a disclosure statement and chapter 11 plan in the Second Case on April 8, 2005.

13.     The Court approved the disclosure statement and confirmed Debtor's chapter 11 plan on June 9, 2005.

14.     The confirmed plan provided that Debtor would market and sell the Home within two years of the effective date of the plan.[4] The plan anticipated that all creditors would be paid in full and with interest from the sale of the Home. If the Home failed to sell within two years of the effective date of the plan, the plan provided that Debtor would place the Home for sale with an auctioneer and that the Home would be auctioned within one hundred and twenty (120) days of July 9, 2007. The plan also provided that Debtor would continue to make adequate protection payments to U.S. Mortgage until the Home was sold.

15.     The Court closed the Second Case on August 10, 2005, but retained jurisdiction pursuant to 11 U.S.C. § 1142.

16.     Since confirmation of the plan, Debtor has made all adequate protection payments due to U.S. Mortgage.

17.     Following confirmation of the plan in the Second Case, Debtor listed the Home and associated business for sale with several realtors and a business broker. Debtor received offers for the sale of the Home that exceeded the amount of U.S. Mortgage's mortgage but Debtor did not accept any offers due either to Debtor's dissatisfaction with the purchase price offered or contingencies that could not be fulfilled.[5]

---

[3]     U.S. Mortgage's Note, filed with its proof of claim in the Second Case, indicated that it was owed payments in the amount of $7,396.78 per month.
[4]     Pursuant to the plan, the "effective date" of the plan was July 9, 2005, which was 30 days following confirmation.
[5]     Debtor testified that she received two offers to purchase the Home that each exceeded 2 million dollars; however, the purchasers did not close because the City of Charleston would not allow the purchasers to use the Home for the various uses planned by the purchasers.

18.    Debtor contacted an auctioneer about the sale of the Home but did not place the Home up for auction.  Debtor testified that she decided not to auction the Home due to the depressed housing market and upon the advice of the auctioneer.

19.    U.S. Mortgage reinstated the foreclosure action and scheduled the sale of the Home for December 4, 2007.

20.    Debtor testified that, prior to the scheduled foreclosure, she was approached by another loan broker, who promised that he could obtain a restructuring of the debt to U.S. Mortgage.  This broker also failed to obtain the promised restructuring.

21.    Prior to foreclosure, Debtor, acting *pro se*,[6] filed this third bankruptcy case, case number 07-06773, on December 3, 2007 ("Third Case") under chapter 11 of the Bankruptcy Code.[7]

22.    Debtor failed to undertake credit counseling within the one hundred eighty (180) day period prior to the petition date for the Third Case.

23.    The Court issued a Rule to Show Cause on December 9, 2007 directing Debtor to show cause why the Third Case should not be dismissed for Debtor's failure to comply with 11 U.S.C. § 109(h).

24.    On December 12, 2007, Debtor filed a certificate of credit counseling, which indicated that she received credit counseling on December 11, 2007, eight days after the petition date.

25.    Prior to the hearing on the Rule to Show Cause, the Court dissolved the Rule based upon Debtor filing the certificate of credit counseling.

---

[6]    Debtor retained an attorney in this case prior to the hearing on the Motion to Dismiss.

[7]    The Third Case is governed by the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

26.    Debtor's schedules in the Third Case again estimate that the value of the Home exceeds all of her current debts.

27.    On December 19, 2007, U.S. Mortgage filed a motion to dismiss this case with prejudice based upon Debtor's failure to comply with the credit counseling requirement of 11 U.S.C. § 109(h) and based upon Debtor's alleged bad faith in filing this case ("Motion to Dismiss").

28.    At the hearing on the Motion to Dismiss, the Court's jurisdiction over the matter was questioned based upon Debtor's ineligibility due to the alleged failure to comply with 11 U.S.C. § 109(h).  Lack of jurisdiction might render any decision to dismiss with prejudice or to deny the Motion void.  The parties anticipated that any dismissal for untimely credit counseling would likely be without prejudice, which would not prohibit a re-filing of this case and which could delay the Court's decision of similar arguments by U.S. Mortgage if Debtor re-filed this case. Therefore, after consultation with the United States Trustee and in order to argue that any dismissal of this case be with prejudice, U.S. Mortgage orally withdrew and abandoned Debtor's failure to obtain pre-petition credit counseling as a ground for its Motion to Dismiss and proceeded only on the theory that Debtor filed the Third Case in bad faith.

29.    Debtor presented testimony as to the value of the Home, the ongoing business operations of the bed and breakfast, her existing debts, her efforts to market and sell the Home, and her efforts to refinance the debt owed to U.S. Mortgage.  Several unsecured creditors appeared at the hearing and supported Debtor's current effort to reorganize and opposed the Motion.

30.    U.S. Mortgage presented testimony from Eugene A Calejo, a business broker hired by Debtor prior to the petition.    Mr. Calejo testified as to offers Debtor received to purchase the Home and his opinion of the current market value of the Home.[8]

## CONCLUSIONS OF LAW

### I.    The Court Has Subject Matter Jurisdiction

Though U.S. Mortgage withdrew and abandoned Debtor's failure to obtain pre-petition credit counseling as a ground to dismiss this case, a question was raised as to whether the Court may nevertheless lack jurisdiction over this matter based upon the alleged defect and whether any resulting order on the issues may be void for want of jurisdiction.    Notwithstanding U.S. Mortgage's waiver of 11 U.S.C. § 109(h) as grounds to dismiss Debtor's case, the Court is required to examine its jurisdiction since parties may not consensually confer jurisdiction upon the Court.    See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 1012-13, 140 L.Ed.2d 210 (1998) (holding that the court may not assume its jurisdiction for purposes of deciding the merits of the issue and that assumption of jurisdiction violates separation of powers); King's Grant Golf Acquisition, LLC v. Abercrombie (In re T 2 Green, LLC), 364 B.R. 592, 601 (Bankr. D.S.C. 2007).    Since it is axiomatic that this Court has sufficient jurisdiction to determine whether it has jurisdiction over the parties and the subject matter, the Court believes it can determine whether any defect in eligibility would deprive it of jurisdiction.    See United States v. United Mine Workers, 330 U.S. 258, 290, 67 S.Ct. 677, 694, 91 L.Ed. 884 (1947); Argaw v. Ashcroft, 395 F.3d 521, 523 (4th Cir. 2005).

11 U.S.C. § 109(h) was added to the Bankruptcy Code by Section 106 of BAPCPA.    See Pub.L. No. 109-8, § 106 (2005).    This new subsection of 11 U.S.C. § 109 provides that an

---

[8]    U.S. Mortgage attached to its pleadings certain exhibits; however, these exhibits were not introduced as evidence and therefore will not be considered as evidence for purposes of the Motion to Dismiss.

individual may not be a debtor under Title 11 unless the individual obtained credit counseling during the 180-day period prior to the petition date, subject to this requirement being waived by the United States Trustee, the debtor qualifying for a limited waiver to obtain credit counseling post-petition, or the debtor being exempt from the requirement based upon disability, incapacity, or military duty in a military combat zone. <u>See</u> 11 U.S.C. § 109(h). Since only a party eligible to be a debtor may file a voluntary petition under the Bankruptcy Code, this Court has previously dismissed the cases of individual debtors when it determined that the debtors failed to comply with 11 U.S.C. § 109(h)(1) and otherwise did not qualify for a waiver or exemption from pre-petition credit counseling.[9] <u>See</u> 11 U.S.C. § 301; <u>In re Dansby</u>, 340 B.R. 564 (Bankr. D.S.C. 2006); SC LBR 1007-2(a) (permitting dismissal of a case if a debtor fails to file a certificate of credit counseling). In this case, U.S. Mortgage has chosen to abandon the issue of whether Debtor is eligible for relief under the Bankruptcy Code leaving this Court to determine whether it must decide the issue of Debtor's eligibility to determine its jurisdiction.

Like many new provisions added by BAPCPA, the import of eligibility under 11 U.S.C. § 109(h) has divided courts regarding whether the requirement is jurisdictional. <u>Compare</u> <u>In re Hawkins</u>, 340 B.R. 642 (Bankr D. Colo. 2006) (holding that 11 U.S.C. § 109(h) is jurisdictional) <u>with</u> <u>In re Ross</u>, 338 B.R. 134, 135-139 (Bankr. N.D. Ga. 2006) (concluding that 11 U.S.C. § 109(h) is not jurisdictional). Construing the plain meaning of 11 U.S.C. § 109(h) and title 11 as a whole, this Court believes that the majority position, set forth in <u>Ross</u> and adopted by many bankruptcy courts within this Circuit, is correct and that eligibility, or lack thereof, to be a debtor under 11 U.S.C. § 109(h) does not bear on whether this Court has jurisdiction over a debtor or

---

[9]    In these instances, the Court has dismissed the cases without prejudice.

the debtor's property.[10]  See In re Brown, 342 B.R. 248 (Bankr. D. Md. 2006) (finding that a person who may be ineligible due to lack of credit counseling still commences a case upon the filing of the petition); In re Dyer, 381 B.R. 200, 203 (Bankr. W.D.N.C. 2007) (holding a case filed by an ineligible debtor is not void); In re Lilliefors, 379 B.R. 608 (Bankr. E.D. Va. 2007) (finding that an asset chapter 7 case should be administered, notwithstanding a debtor's failure to complete pre-petition credit counseling, to avoid fraud).

First, the text of 11 U.S.C. § 109 does not purport to be jurisdictional and indeed jurisdiction is not conferred on this court by any provision of title 11 but rather by the federal jurisdictional statutes.  See New Horizon of N.Y., L.L.C. v. Jacobs, 231 F.3d 143, 155 (4th Cir. 2000) (holding "28 U.S.C. § 1334 governs jurisdiction" of the bankruptcy court).  In this case, jurisdiction is conferred on this Court by 28 U.S.C. § 1334(a), which broadly provides for "original and exclusive jurisdiction of all cases under title 11."  See e.g., Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (construing 11 U.S.C. § 1334(b) broadly to allow the bankruptcy court to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate.").

Interpreting 11 U.S.C. § 109(h) as purely an eligibility requirement is consistent with the interpretation of other provisions of 11 U.S.C. § 109, which have been found to be non-jurisdictional by the various Circuit Courts.[11]  For instance, the Fourth Circuit has determined that a case is commenced and the automatic stay arises in a case filed under chapter 13 notwithstanding the debtor's lack of eligibility to be a debtor under chapter 13 pursuant to 11

---

[10]      In this instance, jurisdiction may also be asserted over the Debtor and the Home, regardless of whether Debtor has technically commenced a new "case," based upon the confirmation order in the Second Case. See 11 U.S.C. § 1142.

[11]      However, one Circuit Court has determined that eligibility under 11 U.S.C. § 109(b) is jurisdictional. See In re Estate of Medcare HMO, 998 F.2d 436 (7th Cir. 1993). Another Circuit Court has found that jurisdiction over a chapter 12 petition is determined by 11 U.S.C. § 109(f). See In re Watford, 898 F.2d 1525, 1526 (11th Cir. 1990).

U.S.C. § 109(e).  See Shaw v. Ehrlich (In re Shaw), 294 B.R. 260 (W.D. Va. 2003) aff'd, In re Wiencko, 99 Fed.Appx. 466 (4th Cir. 2004) (unpublished).  Likewise, two Circuit Courts have determined that 11 U.S.C. § 109(g), which generally prohibits an individual from refiling a case under certain circumstances, is not jurisdictional.[12]  See Promenade National Bank v. Phillips (In re Phillips), 844 F.2d 230, 235 n. 2 (5th Cir. 1988); Montgomery v. Ryan (In re Montgomery), 37 F.3d 413, 415 n. 5 (8th Cir. 1994).[13]  Finally, the Tenth Circuit has concluded that 11 U.S.C. § 109(c), setting forth eligibility requirements for a case under chapter 9, is not jurisdictional but merely sets forth whether a debtor is eligible for relief under chapter 9.  See In re Hampton Creek Metropolitan District, 143 F.3d 1381, 1385 n. 2 (10th Cir. 1998).

In amending the Bankruptcy Code, it appears Congress contemplated that a petition filed by a debtor, who may ultimately be deemed ineligible, would commence a case that would give rise to the automatic stay.  See In re McIver, 78 B.R. 439, 442 (D.S.C. 1987) (finding that a case commenced and the automatic stay arose in a case where the debtor was ineligible under former 11 U.S.C. § 109(f), which is now recodified at 11 U.S.C. § 109(g)).  As a result, it amended 11 U.S.C. § 362(b) to carve out a limited exception to the automatic stay.  Under 11 U.S.C. § 362(b)(21), there is no automatic stay for a debtor who is ineligible to be a debtor under 11 U.S.C. § 109(g) but only as to real property in which the creditor has a lien or a security interest.  Presumably, the stay would still be in effect for other property, for creditors without a lien on real property, and for the debtor personally.  Given that Congress carved out this limited exception to the automatic stay, it follows that Congress recognized that a petition filed by a

---

[12]    This court has also previously determined that 11 U.S.C. § 109(g) is not jurisdictional but rather a hurdle to a debtor's ability to maintain a case.  See In re McAlister, C/A No. 01-06647-W, slip op. (Bankr. D.S.C. Aug. 13, 2001); In re Allen, C/A No. 03-08067-W, slip op. (Bankr. D.S.C. Aug. 29, 2003).

[13]    The Fifth Circuit and the Eighth Circuit have also determined that an involuntary petition may be commenced against a farmer, notwithstanding 11 U.S.C. § 303(a), since a debtor's eligibility to be a debtor under an involuntary petition is not jurisdictional but rather an affirmative defense to the petition that may be waived.  See McCloy v. Silverthorne (In re McCloy), 296 F.3d 370, 376 (5th Cir. 2002); In re Marlar, 432 F.3d 813 (8th Cir. 2005).

debtor, who may be ineligible under other provisions of the Bankruptcy Code, such as 11 U.S.C. § 109(h), would nevertheless commence a case that would give rise to the automatic stay of 11 U.S.C. § 362(a) and that would result in an estate under 11 U.S.C. § 541.[14]  See Ross, 338 B.R. at 139.  The legislative history of 11 U.S.C. § 109(h) does not indicate that Congress intended a different result.  See H.R. Rep. No. 109-31(I), at 2, 18 (2005). see also In re Manalad, 360 B.R. 288, 310 (Bankr. C.D. Cal. 2007) (observing that construing 11 U.S.C. § 109(h) as jurisdictional may produce a result at odds with Congress's goal of minimizing harm to consumers' credit ratings).

Finally, the policy behind BAPCPA and the Bankruptcy Code do not indicate that eligibility should equate to jurisdiction or that lack of eligibility should mandate dismissal.  Lack of eligibility has occasionally been raised by debtors as a defense to the continued administration of their estates.  See Mendez v. Salven (In re Mendez), 367 B.R. 109 (B.A.P. 9th Cir. 2007); Timmerman, 379 B.R. 838 (Bankr. N.D. Iowa 2007); In re Parker, 351 B.R. 790, 798 (Bankr. N.D. Ga. 2006); Lilliefors, 379 B.R. at 611.  In each instance, bankruptcy courts have determined that it is proper to administer the estate to avoid fraud by the debtor and harm to creditors.[15]  This approach is consistent with the requirement of 11 U.S.C. § 1112 that the Court should act in the best interest of creditors and the estate when determining whether a chapter 11 case should be dismissed, and the Bankruptcy Code's longstanding goal of ensuring a ratable distribution among creditors and curbing perceived fraud, the latter of which is the more recent

---

[14]     Further, Congress amended 11 U.S.C. § 521(i) to mandate dismissal if a debtor fails to provide certain documents required by that section.  Omitted from this subsection's mandate of dismissal is the requirement to file documents under 11 U.S.C. § 521(b), the subsection that provides for the filing of a credit counseling certificate. This provides a further indication that Congress did not intend to require dismissal when it appeared from the record that a debtor may not be eligible under 11 U.S.C. § 109(h).  See In re Enloe, 373 B.R. 123, 130-131 (Bankr. D. Colo. 2007).
[15]     Bankruptcy courts have developed various tests to determine whether a case should be dismissed if a debtor failed to comply with 11 U.S.C. § 109(h).  See In re Hess, 347 B.R. 489, 498 (Bankr. D. Vt. 2006) (setting forth a totality of the circumstances test); Manalad, 360 B.R. at 308 (setting forth a three-part test).  This Court need not endorse any test in this case since U.S. Mortgage has abandoned its eligibility argument.

expression of Congressional intent through BAPCPA. See In re Tatsis, 72 B.R. 908, 910 (Bankr. W.D.N.C. 1987) (holding "[t]he filing of a petition pursuant to Title 11 of the United States Code invokes the responsibility of the Court to view the case as filed from the standpoint of the estate").

Based upon the foregoing, the Court concludes that it has jurisdiction over this case. In filing the Third Case, Debtor represented herself on the petition as a person who may be a "debtor"[16] before this Court. This Court finds that the filing of the petition creates a presumption of eligibility under 11 U.S.C. § 109(h) that may be rebutted by parties in interest or that may be raised by the Court on a rule to show cause. See Brown, 342 B.R. at 254 (holding that eligibility under 11 U.S.C. § 109(h) cannot be ascertained until a ruling by the bankruptcy court). Any lack of eligibility does not deprive the Court of jurisdiction since this requirement may be waived by debtors and parties in interest if not timely raised or parties may be estopped from raising the issue in some further proceeding. See Parker, 351 B.R. at 798. Therefore, the Court concludes that it has jurisdiction and may determine whether this case should be dismissed with prejudice for lack of good faith under 11 U.S.C. § 1112.

## II.   U.S. Mortgage's Motion to Dismiss is Denied

U.S. Mortgage has moved to dismiss this case on grounds of Debtor's bad faith. Though "bad faith" is not an express ground for dismissal under 11 U.S.C. § 1112, the Fourth Circuit has found that filing a case in good faith is an implicit prerequisite to the right to obtain the equitable relief offered by the Bankruptcy Code. See Carolin Corp. v. Miller (In re Carolin Corp.), 886 F.2d 693, 698 (4th Cir. 1989). To determine whether a case should be dismissed at the threshold

---

[16]     In multiple places, the petition refers to the party filing the petition as the "debtor." "Debtor" is defined as a person concerning which a case under Title 11 has been commenced. See 11 U.S.C. § 101(13). Since only an entity that may be a debtor is eligible to commence a case under 11 U.S.C. § 301, there is an implicit representation in the word "debtor" that the "debtor" is eligible to commence a case.

of filing for lack of good faith, the Fourth Circuit has adopted a stringent two-part test whereby the movant must demonstrate that the case is both objectively futile and was subjectively filed in bad faith. See id. at 700-701. The Fourth Circuit has cautioned that dismissal for bad faith is not a remedy to be easily employed but must be exercised with great care and caution. See id. at 700. Since U.S Mortgage's Motion to Dismiss was made only sixteen days after the petition date, the Court finds it appropriate to weigh dismissal under the stringent test set forth in Carolin. See In re Dunes Hotel Associates, 94-75715-W, slip op. at 17, 1997 WL 33344253 (Bankr. D.S.C. Sept. 26, 1997) (aff'd Dunes Hotel Assoc. v. Hyatt Corp. (in re Dunes Hotel Associates), (D.S.C. 2000) (noting that when a case moves pass the threshold stage, a debtor's subjective bad faith is sufficient to warrant dismissal).

"The objective futility inquiry is designed to insure that there is embodied in the petition 'some relation to the statutory objective of resuscitating a financially troubled debtor.'" Carolin, 886 F.2d at 701 (internal citation omitted). Futility must be immediately manifest so that there is no evident hope of a debtor's rehabilitation. See id. (holding "it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation"). A primary indicator that a case is not objectively futile is the presence of a significant equity cushion in the debtor's primary asset and the generation of sufficient cash flow to sustain the debtor's business. See In re Dunes Hotel Associates, 188 B.R. 162, 169 (Bankr. D.S.C. 1995); In re Greenwood Supply Company, 295 B.R. 787, 792 (Bankr. D.S.C. 2002). The presence of a significant asset and unsecured creditors with substantial claims also indicates that a debtor is a going concern and can reorganize. See Carolin, 886 F.2d at 703.

12

In this case, it is evident that the case is not objectively futile. Evidence presented at the hearing indicates that Debtor has recently received offers to purchase the Home, which exceed the secured debt on the Home. Though Debtor may never realize the scheduled value of the Home, U.S. Mortgage's witness testified that the lowest offer for the Home was $1.25 million dollars, which excluded the purchase of Debtor's license for the bed and breakfast. Even if this offer was accepted, there would still be a substantial dividend to unsecured creditors who may otherwise receive nothing in a foreclosure proceeding. See In re Coleman, 426 F.3d 719, 728 (4th Cir. 2005) (finding no objective futility in a debtor's chapter 11 even though the bankruptcy was filed to stop a foreclosure and liquidate the primary asset to pay creditors). The business associated with the Home is also self-sustaining. Debtor testified that the business grossed nearly $290,000.00 last year, an amount that has been sufficient to make all of the agreed upon adequate protection payments to U.S. Mortgage since 2004, to pay employees, and other necessary expenses. Debtor testified that she expects the business will continue to succeed based upon its past performance, market familiarity, and future bookings. Finally, Debtor testified that there is a moratorium on bed and breakfast businesses in her neighborhood but that she could sell her bed and breakfast license with the Home to add to the substantial market value of the Home. The evidence strongly indicates that reorganization is not objectively futile and that reorganization is necessary to preserve the value of both the Home and the associated business so that all creditors may receive a distribution. Since U.S. Mortgage cannot meet the first prong of the Carolin test at this stage, the court must deny the Motion to Dismiss. See Dunes, 188 B.R. at 170.

The motion should also be denied because there has not been a sufficient showing that this case was subjectively filed in bad faith. See Carolin, 886 F.2d at 701, fn 3 (noting that the

bankruptcy court should make a finding as to both prongs of the Carolin test). "Subjective bad

faith means an intent by the debtor to abuse the protections of Chapter 11 and to cause hardship

or delay to creditors, without any real ability to reorganize." See In re Belair 301-50 S.W.

Quadrant Commercial Properties, Inc., 972 F.2d 338, 1992 WL 200849, *3 (4th Cir. 1992)

(unpublished).    Under the Carolin standard, a case should not be dismissed for lack of good

faith, even if the prospect of reorganization is doubtful, if there is not a sufficient showing that

the debtor subjectively filed the case in bad faith.  See Carolin, 886 F.2d at 701.  The Fourth

Circuit has found subjective bad faith in only the most egregious of circumstances.  See id. at

703-705; In re Premier Automotive Services, Inc., 492 F.3d 274, 280-281 (4th Cir. 2007).  After

considering the facts in Carolin, this Court set forth a non-exclusive list of factors that it may

consider in determining subjective bad faith:

1.    The debtor has one asset;
2.    Secured creditors' liens encumber the asset;
3.    There are generally no employees except for the principals and there is no
       ongoing business activity;
4.    The debtor has little or no cash flow and no available sources of income to sustain
       a plan of reorganization or make adequate protection payments;
5.    There are few, if any, unsecured creditors whose claims are relatively small;
6.    There are allegations of wrongdoing by the debtor or its principals;
7.    The timing of the debtor's filing evidences an intent to delay or frustrate the
       legitimate efforts of secured creditors to enforce their rights;
8.    The debtor is afflicted with the "new debtor syndrome" in which a one asset entity
       is created or revitalized on the eve of foreclosure to isolate the insolvent property
       and its creditors;
9.    There is no realistic possibility of reorganization of the debtor's business;
10.   The reorganization essentially involves a two-party dispute; and
11.   Bankruptcy offers the only possibility of forestalling loss of the property.

See Dunes, 188 B.R. at 171-172.

Above all, the Court must consider the totality of the circumstances since no single factor

will necessarily lead to a finding of bad faith.  See Carolin, 886 F.2d at 701; In re Tachting

Connections, Inc., 981 F.2d 1253, 1992 WL 372947 (4th Cir. 1992) (unpublished).

Considering the totality of the circumstances, the Court is not convinced that Debtor filed this case in bad faith. Though not all of the above factors are applicable, the Court notes that Debtor is actively operating the business associated with the Home as a going concern, which employs two individuals, in addition to Debtor, and provides Debtor with a reasonable prospect of paying off creditors and reorganizing in this case. There are many unsecured creditors in this case thus making this case more than a two-party dispute. Each unsecured creditor that appeared at the hearing on the Motion to Dismiss supported the continuation of this case and each would likely be prejudiced if the Court granted dismissal. The complaining creditor has received adequate protection payments on time for three years and appears to be more than adequately protected by equity above its security interest in the Home, which indicates that harm to U.S. Mortgage, if any, by this bankruptcy is minimal. It appears that Debtor has made earnest attempts to refinance the debt of U.S. Mortgage but has been duped by various loan brokers who were paid tens of thousands of dollars but did not fulfill their promises. Finally, Debtor presented credible testimony regarding her intent in filing this case and her desire to pay all creditors. Each of these facts weigh against finding that this case was filed in bad faith. Therefore, the Court finds that U.S. Mortgage has failed to meet its burden of proof on this issue and the case should not be dismissed with prejudice at this stage.

Notwithstanding the foregoing, Debtor has delayed U.S. Mortgage's foreclosure action by bankruptcy on three occasions. This delay has resulted in additional expenses for U.S. Mortgage potentially to the prejudice of unsecured creditors. Debtor may have also failed to comply with 11 U.S.C. § 109(h). Finally, she has failed to comply with her previous chapter 11 plan, which has delayed not only U.S. Mortgage but unsecured creditors who have now waited

more than three years for payment.[17] Given this delay and Debtor's failure to comply with her plan in the Second Case, it may be appropriate to appoint a chapter 11 trustee in this case unless Debtor can expeditiously liquidate the Home or make other arrangements to pay creditors in this case.

## CONCLUSION

Based upon the foregoing, the Court concludes that it has subject matter jurisdiction, notwithstanding any failure by Debtor to comply with 11 U.S.C. § 109(h), and may therefore consider the merits of U.S. Mortgage's Motion to Dismiss with Prejudice. Debtor's Third Case is not objectively futile and does not, at this stage, appear to be subjectively filed in bad faith. Therefore, the Motion to Dismiss is denied.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
February 26, 2008

---

[17] In Debtor's Second Case, the Court received a letter on July 3, 2007 from one of Debtor's unsecured creditors complaining about the lack of payment from Debtor, Debtor's post-petition spending habits, and Debtor's failure to comply with her chapter 11 plan.